FILED
2026 Jan-29  PM 12:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **FANNIE KELLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO:** |
| **v.** ) | |
| ) | |
| **STONE GROUP, INC.** ) | **PLAINTIFF DEMANDS TRIAL** |
| ) | **BY STRUCK JURY** |
| **Defendant.** ) | |

---

## COMPLAINT

---

## INTRODUCTION

Plaintiff Fannie Kelley ("Plaintiff" or "Watkins") brings this action for legal and equitable relief to address unlawful employment practices and violations of Federal law Stone X Group, Inc. ("Defendant" or "Stone X").

## JURISDICTION AND VENUE

1.    This Complaint seeks legal and equitable relief to redress Defendant's unlawful violations of Plaintiff's rights secured by the following:

a) The Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 et seq. ("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., alternatively, 42 U.S.C. § 1981.

2.    Jurisdiction is proper pursuant to the following:

1

a) 28 U.S.C. §§ 1331 and 1343.

3.      Venue is appropriate in this judicial district under 28 U.S.C. § 1391 because the unlawful discriminatory practices alleged in this Complaint occurred within the Northern District of Alabama and Plaintiff worked for Defendant from this District.

## PARTIES

4.      Plaintiff is an Africa American female and at all times relevant hereto was a resident of Calhoun County, Alabama. Kelley has been employed for over six (6) years with Defendant.

5.      Defendant is a financial advising company registered in Delaware and doing business in the Northern District of Alabama. Defendant employs over four thousand (4,000) employees and is Plaintiff's employer.

6.      Defendant is a foreign corporation authorized to do business in Alabama and was Plaintiff's employer within the meaning of the ADA, Title VII and 42 U.S.C. § 1981.

## NATURE OF ACTION

7.      Kelley was subjected to ongoing unlawful employment practices based on race and disability and retaliation by Defendant. Plaintiff filed multiple complaints of race discrimination with Defendant.

8.     This action seeks to redress these grievances resulting from the unlawful actions of Defendant and its agents, servants, and employees, committed with respect to Plaintiff's employment and otherwise, and for a permanent injunction restraining Defendant from discriminating against Plaintiff and others similarly situated on account of their race and/or actual or perceived disability and in retaliation for engaging in protected conduct.

9.     Kelley seeks all relief to which she is entitled, including compensatory damages, punitive damages, injunctive relief, costs, interest, and attorneys' fees incurred in the bringing of this action.

## ADMINISTRATIVE PROCEDURES

10.     On January 21, 2025 within 180 days of the acts of discrimination of which she complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  (*See* **Exhibit A**).

11.     Plaintiff received her Notice of Right to Sue on or about November 13, 2025.  Plaintiff timely filed this action. (*See* **Exhibit B**).

12.     Plaintiff has satisfied all conditions precedent to bringing this action.

13.     Plaintiff brings claims against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 and the Americans with Disabilities Act of 1990 ("ADA" or "ADAAA").

## STATEMENT OF FACTS

14.    Plaintiff is a sixty-year-old African American female who has a hearing disability recognized by the ADA.

15.    Defendant employed Plaintiff on January 1, 2018 as a Service Desk Analyst at its Birmingham, Alabama location.

16.    During Plaintiff's employment, she provided technical support, addressed user inquires, and managed service requests. Since Plaintiff has been employed with Defendant, she has received a satisfactory rating on her semiannual performance evaluations. For instance, Plaintiff received annual and merit bonuses in 2021, 2022, and 2023, and the first distribution of her bonus in May 2024 for her impact on the company's profitability and individual evaluation scores.

17.    In March 2020, Plaintiff transitioned to remote work due to the COVID-19 pandemic. Her job required her to attend weekly Microsoft Team meetings with the Service Desk group which lasted approximately 30 minutes.

18.    From March 2022 to May 2022, employees during these weekly meetings would display pictures of black colored animals such as monkeys and dogs on their screen for the entirety of the meeting. No other employees were visible except Plaintiff's manager Carlie Pitter and co-worker Paul Hansen.

19.    In May 2022, as a result of Defendant's employees' offensive behavior on Microsoft Teams, Kelley complained to Human Resources Advisor Jessica

4

Thatch regarding this behavior. Following this, Thatch asked Associate Director Andrew Edwards to investigate Plaintiff's complaint.

20.    In September 2022, all of Stone X employee's returned to the office.

21.    In October 2022, Plaintiff noticed that her colleagues started to engage in inappropriate and disruptive behavior towards her while in the office. For instance, on several occasions, and as part of a repeated pattern, Manager Jennifer Collier would routinely follow Plaintiff to the vending machine area, stand behind her, and state "You don't need that." Additionally, on one occasion, co-workers Juowan Mathis and Alana Pinion intentionally engaged in a loud conversation while Kelley was on a call with a client so that she would be unable to hear.

22.    Furthermore, on several occasions, and as part of a repeated pattern, co-workers Tamara Kidd and a new employee would follow Kelley during her lunch breaks. Another instance, involved co-worker James Hugh walking up and down the aisle mocking the way Kelley walked. These incidents, along with others, were not isolated and they significantly interfered with her work. Many coworkers observed this routine behavior.

23.    In March 2023, co-workers Andrew Couturpie and Eric Roundy pushed their chairs backwards into the office aisle resulting in Couturpie striking Kelley's left hip while Roundy struck her right hip. Kelley immediately reported the incident

5

to Thatch, but no effective action was taken by Human Resources to address her complaint.

24.    In May 2023, Kelley requested a reasonable accommodation due to her hearing impairment in her right ear, asking for seating adjustments. As a result, Stone X allowed Kelley to work remotely from home as her accommodation.

25.    Shortly after Kelley's work from home transition, she began receiving frequent phone calls from callers who reported they were unable to hear her. She immediately informed her supervisor Chris Cormier because she knew her performance was based on test tickets and thought these calls were done by co-workers Mathis and Pinion. Cornier ignored her concerns and suggested that she get a new headset.

26.    In December 2023, Kelley filed a formal complaint with Stone X's Human Resource Department through Thatch and her supervisor Comier regarding the pattern of racial discrimination and harassment that she continued to experience. The complaint was not addressed or investigated at the time.

27.    In January 2024, approximately one month later, Kelley sought support from Defendant's Employee Assistance Program due to her ongoing racial discrimination complaints not being addressed by Stone X. In this program, Kelley received counseling to address the emotional and psychological impact of her discrimination.

28.     In February 2024, approximately two months later, Kelley followed up with Comier regarding her complaint to ensure it was being addressed. Following this conversation, she received a message from Thatch to schedule a meeting regarding her complaints.

29.     In April 2024, Thatch informed Kelley that an investigation was started. However, Stone X determined that her complaints were "unfounded." Following this determination, Kelley noticed a change in her manager's and co-worker's demeanor towards her. In fact, Kelley was even questioned about whether she liked her job.

30.     In May 2024, Kelley noticed a change in supervisor Cormier's attitude towards her. In fact, Cormier asked if Kelley was "okay with him."

31.     On or around July 29, 2024, Kelley noticed two tickets from Juliano Desouza from Miami, Florida, requesting a "slave Bloomberg Monitor" and Tom DeBoinville from London, pertaining to "United Against Slavery" website.

32.     On or around August 5 or 7, Kelley reached out to Comier concerning an issue she was having with answering calls. Comier responded that he would set up a call with HR to discuss her concerns. Kelley responded, "What does HR have to do with this discussion?" Kelley's question was left unanswered.

33.     On or around August 9, 2024, Cormier reached out to Kelley regarding "disruptive" comments she allegedly made in the chat during a Microsoft Teams

meeting. Comier indicated that he had "documented examples" of these comments. Kelley has yet to see these examples.

34. On or around August 23, 2024, Kelley met with Cormier and Thatch, where she was informed by Thatch that Stone X was terminating her employment due to "inappropriate behavior." After Kelley asked for documentation of this, Cormier glanced at Thatch, who shook her head, and Comier replied, "No," without offering any further clarification. Kelley has yet to see any documentation of her alleged "inappropriate behavior."

35. Kelley was subject to ongoing adverse treatment including ongoing harassment and termination in retaliation of her 2022 and 2023 race discrimination complaints to Stone X in violation of federal law.

36. Only four months after Kelley's complaint of discrimination was deemed "unfounded," on August 23, 2024, Stone X fired Kelley. Stone X claimed they fired Kelley because of "inappropriate behavior." However, no evidence of Kelley's alleged "inappropriate behavior" was ever presented.

**COUNT ONE – RETALIATION**
**UNDER TITLE VII and U.S.C. § 1981 and ADA**

37. Kelley repeats and realleges paragraphs 1 through 36 hereof, as if fully set forth herein.

38.     In May 2022 and December 2022, Kelley engaged in protected activity by formally complaining to Stone X's Human Resources Advisor Jessica Thatch about the pattern of discrimination and harassment she continued to experience from her co-workers at Stone X based on her race and/or disability.

39.     Only in December 2022, nine (9) months after Kelley complained of race discrimination, in February 2023, seven (7) months after Kelley followed up on her complaint, and in April 2023, four (4) months after her complaint was deemed "unfounded," Stone X fired Kelley on August 23, 2024, purportedly because she engaged in "inappropriate behavior."

40.     Stone X's stated reason for terminating Kelley's employment is pretextual and baseless. Stone X fired Kelley because she complained of race discrimination in May 2022 and December 2023.

41.     Stone X's retaliatory conduct intentionally injured Kelley and caused her emotional distress, physical injury, professional and personal reputational harm, and financial damage.

42.     As a proximate result of Stone X's unlawful retaliation, Kelley suffered financial loss and duress, emotional distress, physical injury and pain, mental anguish, embarrassment, humiliation, loss of career advancement, loss of employment opportunity and other employment benefits, including pecuniary and non-pecuniary losses.

43.    WHEREFORE, Plaintiff seeks declaratory and injunctive relief; award of lost wages; pre and post-judgment interest; nominal, compensatory, and punitive damages for humiliation, embarrassment, and mental anguish; costs; attorneys' fees; and any and all such other relief the trier of fact may assess.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

Respectfully submitted,

*/s/ Kenneth D. Haynes*
Kenneth D. Haynes
Attorney for Plaintiff

**OF COUNSEL:**
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Email: kdhaynes@haynes-haynes.com

## PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL:

StoneX Group Inc.
4000 Eagle Point Corporate Drive
Birmingham, AL 35242